*Western District*

## LEE JEWELERS, INC. d/b/a OMICRON JEWELERS BY ITS RECEIVER, ARTHUR GOLDSTEIN

### v.

## COLUMBIA DIAMOND RING CO., INC.

Argued: Sept. 10, 1973 - Decided: Nov. 26, 1973

**See: Reporter's Note.**

*Present:* Sloan (Presiding), Cimini, Larkin, JJ.

Case tried to* in the Central District Court, No. 181710.

**Larkin, J.** This is an appeal from the sustaining of the defendant's demurrer to the plaintiff's declaration. The declaration, set forth in greater detail in the margin, alleged in substance, that the defendant had sold to the plaintiff specified quantities of jewelry and had received payment by means of certain notes and checks which were subsequently dishonored

---

* Name of presiding justice not given to reporter.

and that knowing of the ''insolvency'' of the plaintiff, and within four months of the appointment of a receiver for the plaintiff, the defendant received from the plaintiff certain money and accepted the return of certain jewelry on account of the plaintiff's debt to the defendant.

The present action was brought in the name of the plaintiff corporation — a retail jewelry outlet — by a receiver, duly appointed by our Superior Court, against the defendant, a wholesale supplier of jewelry. The receiver claims to be entitled to the monies so paid and the value of jewelry so returned. The defendant demurred on the ground that the declaration failed to state a cause of action. The plaintiff seasonably appealed from the trial court's action sustaining the demurrer.

The receiver contends that at the time that the retailer returned the money and goods to the wholesaler that the wholesaler ''knew'' that the retailer was insolvent and that the transaction thus constituted a ''fraudulent conveyance'' which the receiver had the right and duty to set aside. In the alternative he argues that the return of the goods constituted a preference vis-a-vis other creditors and should, on this basis, be set aside. Defendant argues that the transactions at issue do not constitute fraudulent conveyances nor, in the absence of resort to the Federal Bankruptcy laws, concededly not invoked here, the receiver

may not urge that the transaction constituted an illicit "preference". We agree with the defendant on both grounds and uphold the sustaining of the demurrer.

Although the plaintiff asserts that the record presents a question of fraudulent conveyance, we hold that the declaration states no facts that would warrant the conclusion that a fraudulent conveyance was alleged. The declaration merely alleges the payment of an antecedent debt by goods and money at a time when the debtor was in straightened financial circumstances. This is not fraud and there are no allegations of intent to defraud.

Prior to the adoption of the Uniform Fraudulent Conveyance Act there existed vast conflict and confusion among, and frequently even within the various jurisdictions as to the steps which a creditor had to take in order to reach assets fraudulently conveyed. See 1 *Glenn, Fraudulent Conveyances* and *Preferences,* §121 (Rev. ed. 1940). In order to clarify and simplify the then existing law on the subject the National Conference of Commissioners on Uniform Laws, in 1915 drafted uniform act governing the subject. The Uniform Fraudulent Conveyance Act in its final form was approved by the Conference in 1918 and subsequently adopted by a substantial number of states. It was adopted by Massachusetts in 1924 and is embodied in G.L. c. 109A, § 1-13. § 3 of the Act deals with the question of what constitutes

"Fair Consideration" under the statute. It provides as follows:

> "§3. Fair Consideration. Fair consideration is given for property, or obligation,
>
> (a) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or *an antecedent debt is satisfied,* or
>
> (b) When such property, or obligation is received in good faith to secure a present advance or *antecedent debt* in amount not disproportionately small as compared with the value of the property, or obligation obtained." (emphasis supplied).

It is clear that under the express terms of the Act, an antecedent debt may constitute fair consideration. This has been the understanding in Massachusetts, *Bianco* v. *Lay,* 313 Mass. 444 (1943) and in other jurisdictions. *U. S. Fidelity & Guaranty Co.* v. *Posted,* 64 Cal. App. 2d 567 (1944); *Woodford County Nat. Bank of El Paso* v. *Conklin,* 292 Ill. App. 53 (1937).

The "antecedent" debt must be a debt of the grantor and not of a third party, *Hansen* v. *Cramer,* 39 Cal. 2d 321 (1952). *Kline* v. *Inland Rubber Corp.,* 194 Md. 122 (1949); *Neumeyer* v. *Weinberger,* 236 Wis. 534, see cases collected in Annot., 30 A.L.R. 2d 1209 (1953). And where the transfer involving the antecedent debt is between husband and wife

or near relatives it will be scrutinized very carefully. See e.g., *Johnson* v. *Lentini,* 66 N.J. Super. 398 (1961). But the mere fact of the familial relationship will not, of itself, change the usual rule. Cf. *Godfrey Frank & Co.* v. *Doughty,* 47 So. 643 (Miss. 1908); Note 18 Yale L.J. 647 (1909).

Here there is nothing to indicate that the relationship between the plaintiff retailer and the defendant wholesaler was anything but an "arm's length" business relationship. So far as the stock in trade which was returned to the wholesaler, the assets in question are the very same assets which generated the exculpatory antecedent debt.

The mere fact that the creditor-wholesaler may have been aware of the difficult financial circumstances of the debtor does not invalidate the transfer in the circumstances of an "antecedent debt" situation. This situation is in contrast to that of a non-creditor who purchases property knowing of the vendor's intention to prejudice his creditors. In this latter case, the conveyance is voidable because not taken in good faith. See, *Glenn,* § 294 et seq. The difference in rationale between these two situations has been put cogently as follows:

> "The reasons that have been assigned for the distinction between one who purchases for a present consideration and one who purchases in satisfaction of a pre-existing

debt are sound and unassailable. The former is in every sense a volunteer. He has nothing at stake — no self-interests to serve. He may, with perfect safety, keep out of the transaction . . . . If yet he does enter it, knowing the fraudulent purpose of the grantor, the law, very properly, says that he enters it for the purpose of aiding that fraudulent purpose. Not so with him who takes the property in satisfaction of a pre-existing indebtedness. He has an interest to serve. He can keep out of the transaction only at the risk of losing his claim. The law throws upon him no duty of protecting other creditors. He has the same right to accept a voluntary preference that he has to obtain a preference by superior diligence." . . . . *Lockren* v. *Rustan*, 9 N.D. 43, 48 (1899).

For all of the foregoing reasons we hold that the facts alleged by the receiver do not make out a fraudulent conveyance.

The receiver has a second contention. Here the thrust of his arguments is that a receiver appointed by a Massachusetts Superior Court sitting in Equity has an inherent right to recover as a "preference", money and the value of goods transferred by a debtor to its creditor, even in an "antecedent debt" situation within four months of the appointment of the receiver and at a time when the debtor

was insolvent and when the creditor had reason to believe the debtor was insolvent.

The defendant, on the other hand contends that "the settled laws of Massachusetts, as understood by practicing attorneys for years, is that the only way to set aside the payment of an antecedent debt as a preference, is to file a petition in Bankruptcy." Defendant further argues that "for years the securing of an attachment on the making of some or other preference has been the ground of many bankruptcy proceedings. Such bankruptcy proceedings have been undertaken with the knowledge that *only in bankruptcy* can such preference be set aside." (emphasis supplied)

The issue thus posed is whether the fact of bankruptcy is an indispensable precondition to a receiver bringing an action of the type pressed by the receiver in this case. Do the Federal Bankruptcy Laws so preempt the field that state receivers cannot press suits for common law preferences?

We do not believe that it is necessary to answer the broad question of whether, under any facts, a receiver could bring such an action. Suffice it to say that on this record we do not believe that an action for preference lies.

As we have noted above, at common law a preference is not unlawful or voidable.

> "It is not a fraud at Common Law for a debtor who is in straightened circumstances to prefer one or more creditors,

although such payment may render it impossible to pay anything to his other creditors. In the absence of any statute to the contrary, a debtor commits no fraud, (as was said by Chief Justice Bigelow in *Banfield*·v. *Whipple,* 14 Allen, 13 at page 15), ''by appropriating his property to the satisfaction of one or more of his creditors to the exclusion of all others.'' *Lyon* v. *Wallace,* 221 Mass. 351, 353.

''A debtor has a right at common law to prefer one creditor to another provided there is no secret trusts for the benefit of the debtor.'' *Gurney* v. *Tenney,* 226 Mass. 277, 279.

Since 1841 preferences have been invalid in the United States, whenever bankruptcy acts have been in force. See, *Moore* on *Fraudulent Conveyances* (1908) 455-469. But in the absence of statutes they are lawful. § 3 of the Uniform Fraudulent Conveyance Act, *supra.* In *Straton* v. *Law, Trustee in Bankruptcy,* 283 U.S. 318, the court alluded to the ''settled rule'' that ''state insolvency laws which are tantamount to bankruptcy because they provide an administration of the debtor's assets and the winding up of his affairs similar to that provided by the National Act are suspended while the latter remains in force.''

Whether this language operates to preclude a receiver from ever bringing an action to set aside a preference we need not decide. Rather

we hold that on a consideration of the totality of facts and circumstances of this case, no such action lies here.

The sustaining defendant's demurrer is confirmed and the **report is dismissed.**

Attorneys names not supplied to reporter.