## PECKHAM v. RONRICO CORPORATION et al.

Civ. No. 4639.

District Court, Puerto Rico.

July 1, 1947.

Walter L. Newsom, Jr., and E. Cordova Diaz, both of San Juan, P. R., for plaintiff.

Jose G. Gonzalez and H. S. McConnell, both of San Juan, P. R., for defendants.

SNYDER, Acting District Judge.

The receiver of the Meyer-Kiser Bank of Indianapolis, Indiana, obtained a judgment for $824,933.33 against Sol · Meyer, now deceased, the former president of the bank. The plaintiff, assignee of the receiver, seeks in this suit to subject certain shares of the stock of the Ronrico Corporation to the payment of this judgment.

The gravamen of the plaintiff's action is that Sol Meyer promoted the organization and furnished the major portion of the capital of the Florida Cane Products Corporation, in consideration for which it issued its capital stock; but instead of having the stock issued in his own name, Sol Meyer, in order to defraud his creditors, caused the shares to be issued in the names of certain of the defendants, including his son, Fred S. Meyer. The complaint is directed against shares of the Ronrico Corporation because the Florida corporation acquired shares representing fifty percent of the outstanding stock of the Ronrico Corporation, which it thereafter transferred to a voting trust, of which the stockholders of the Florida corporation were the beneficiaries.

Those of the defendants who are thus charged in effect with being strawmen for Sol Meyer, after answering the complaint, filed a motion for summary judgment, which is now before me for decision. In support of their motion they filed lengthy affidavits stating in detail the manner in which each of them acquired his stock in the Florida corporation.

According to these affidavits, the Florida corporation had an authorized capital stock of $350,000, divided into 3,500 shares of a par value of $100 each, of which 1,400 shares were designated as Class A and 2,100 as Class B. There was no substantial difference in rights between the two classes of stock, except that the Class A shares were entitled to receive $150 in dividends before any dividends were paid upon the Class B shares.

The defendants state in their affidavits that only 1,731 shares of Class B stock were issued. They were all issued to one of the defendants, Hoke T. Maroon, as trustee, who held (a) one-half or 865½ shares for Thomas Hiram Gosch, and (b) one-half for defendant Ferd S. Meyer and his minor son, defendant James M. Meyer. The consideration received by the Florida corporation for these 1,731 shares was the assignment to the corporation of the rights of J. B. Gosch in a process which he had invented for the accelerated maturing of alcoholic beverages known as the Gosch process, and which was patented as U. S. Patent No. 1,963,165. The one-half share of the Class B stock which went to Ferd S. Meyer and his son came from Gosch in consideration of the efforts of Ferd S. Meyer in promoting the Florida corporation as a vehicle for the commercial exploitation of the Gosch process.

The defendants in whose names Class A shares are listed swear that they bought the shares for themselves and paid for them in cash. The defendant Ferd S. Meyer states that, in order to pay for the 202 shares of Class A stock which he purchased, he borrowed approximately $20,000 on his life insurance policies. He gives in detail the companies, policy numbers and amounts of each loan. One hundred fifty shares were purchased by Sol and Ferd S. Meyer as trustees for Edward Sol, Jr., and James M. Meyer, the trust being known as the Florence S. Meyer (Indiana) Trust.

The total number of Class A shares issued by the Florida corporation was 1,170. From the affidavits it appears that some of

the original subscribers, namely, Harry J. Heriff, Howard A. Intermill, R. H. Jones, Loomis & Hall, and R. J. Bergeron, with a total of 425 Class A shares, have not been included in the complaint. The number of Class A shares in issue in this proceeding appears to be 745, of which Ferd S. Meyer, individually and as trustee of the Florence S. Meyer (Indiana) Trust, and his wife were the principal holders.

The plaintiff has not controverted any of the statements made by the defendants in their affidavits as to the consideration paid to the Florida corporation for its shares. Nor has he challenged the statement that the Class B shares were issued for an assignment of the Gosch process. Instead of coming forward with some facts to dispute these statements in the affidavits of the defendants, the plaintiff confines himself to stating in his affidavit that "plaintiff and his counsel say that they have good reason to believe and do verily believe that all the allegations of the complaint are true in fact * * *".

Rule 56 (e) Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that "opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Plaintiff's affidavit obviously does not meet this standard.

Shientag, Summary Judgment, 4 Fordham L. Rev. 186, says at pp. 214, 215: "Facts * * * have to be set forth in opposing affidavits, tending to contradict or to cast doubt or suspicion upon the case set up in the moving affidavits. A statement of one's belief is not a statement of fact. * * * No testimony to this effect would be admissible upon a trial." Moreover, the plaintiff cannot "take the arbitrary position that because of the complicated nature of the case or the difficulty of showing the existence of facts in his favor, that he will simply deny those submitted by defendant, and offer none of his own." Hemler v. Union Producing Co., D. C. W. D. La., 1941, 40 F.Supp. 824, 834. See Piantadosi v. Loew's Inc., 9 Cir., 1943, 137 F.2d 534; Engl v. Ætna Life Insurance Co., 2 Cir., 1943, 139 F.2d 469. The plaintiff does not, of course, have "to submit all of his evidence. It is sufficient if he shows that he has evidence of a substantial nature, as distinguished from legal conclusions, to dispute or contradict that of the defendant on the material factual issues of the case. * * * *" Hemler v. Union Producing Co., supra, 40 F.Supp. at page 834; Williams v. Kolb et al., 1944, 79 U.S. App. D. C. 253, 145 F.2d 344; Seward v. Nissen, D.C. Del., 1942, 2 F. R. D. 545; Radio City Music Hall Corp. v. United States, 2 Cir., 1943, 135 F.2d 715, 718.

As the plaintiff's affidavit contains no competent evidence in support of his complaint, he could not prevail here if he relied on his affidavit alone. Under Rule 56 (c) where there is no genuine issue as to any material fact, summary judgment may be entered. And a party is entitled "to pierce the allegations of fact in the pleadings and to obtain relief by summary judgment where facts set forth in detail in affidavits, depositions, and admissions on file show that there are no genuine issues of fact to be tried." 3 Moore's Federal Practice 3175.

Judge Clark points out in Engl v. Ætna Life Ins. Co., 2 Cir., 1943, 139 F.2d 469, supra, at page 473: "* * * we have often held that mere formal denials or general allegations which do not show the facts in detail and with precision are insufficient to prevent the award of summary judgment. * * * In the present case we have from the plaintiff * * * only in effect an assertion that at trial she may produce further evidence, which she is now holding back * * *. If one may thus reserve one's evidence when faced with a motion for summary judgment there would be little opportunity 'to pierce the allegations of fact in the pleadings' or to determine that the issues formally raised were in fact sham or otherwise unsubstantial. It is hard to see why a litigant could not then generally avail himself of this means of delaying presentation of his case until the trial. So easy a method of rendering useless the very valuable remedy of summary judgment is not suggested in any part of its history or in any one of the applicable decisions."

With Judge Clark again speaking for the court, it was stated in Madeirense Do Brasil S/A v. Stulman-Emrick Lumber Co., 2 Cir., 1943, 147 F.2d 399, 404, certiorari denied, 325 U.S. 861, at page 404, 65 S.Ct. 1201, 89 L.Ed. 1982, that "The utility of the procedure in laying bare the real issues in an action would be manifestly impaired if plaintiff could force a trial in New York, far from the scene and the evidence fully available to it, with no indication whether or how it intends to dispute the statements it has made or acted upon". See also Avrick v. Rockmont Envelope Co., 10 Cir., 1946, 155 F.2d 568, 571; 45 Col. L. Rev. 964.

In coming to the conclusion that the plaintiff's affidavit contains no competent evidence in support of his complaint, I have not failed to take into account the portion of the plaintiff's counter-affidavit calling attention to the misstatement of certain dates in the affidavits of Ferd S. Meyer and two other defendants relating to the patent of the Gosch process. Supplementary affidavits have been filed by these defendants seeking to rectify these misstatements. It is difficult to believe the misstatements were made deliberately, as they involve dates which are a matter of public record in the United States Patent Office. The plaintiff nevertheless contends that these misstatements were deliberately made to conceal the fact that Ferd S. Meyer had improperly failed to list his interest in the Gosch process as an asset in his schedules filed in his bankruptcy proceeding in the District Court for the Southern District of Florida.

However, even if this contention of the plaintiff be accepted, I am unable to see how it can affect the result herein. The issue is whether Sol, not Ferd, Meyer had any interest in the Gosch process. As to that point, no issue of fact is raised by anything contained in the plaintiff's affidavit. The plaintiff argues in his brief that "Ferd S. Meyer's disclaimer of this property in his bankruptcy * * * leads to a strong inference of fact that it was, in truth, the property of Sol Meyer, as alleged in the complaint." But I am unable to see how proof, even if it exists, tending to show that Ferd S. Meyer acquired a one-half interest in the Gosch process prior to rather than after his bankruptcy proceeding gives rise to an inference that Sol Meyer owned part of the process. On the contrary, the only inference to be drawn from such a deliberate misstatement is that Ferd Meyer owned part of the process and desired to conceal such ownership from his creditors. And that scarcely entitles a judgment creditor of Sol Meyer to lay claim to the property as belonging to the latter.

The plaintiff, however, has another string to his bow. He relies on Rule 56 (f), which provides that the court may refuse a motion for summary judgment when the party opposing the motion cannot for reasons stated present by affidavit facts essential to justify his opposition. The reasons stated by the plaintiff are in substance that if he is compelled to disclose "certain additional facts" which are now "under further investigation", the defendant would be forewarned and given an opportunity for further concealment, thereby prejudicing the plaintiff in the preparation and trial of his case. Plaintiff further states that he desires and intends to take the depositions of the defendants and to examine their records before trial and that disclosure at this time of the evidence already in the hands of the plaintiff would prejudice him in the taking of such depositions.

While the plaintiff does not go so far as to contend that a motion of a defendant for summary judgment may never be granted in a suit involving a charge of fraud, it would seem difficult, if not impossible, for a defendant ever to obtain such a judgment if the contention of the plaintiff herein as to the scope of Rule 56 (f) is well founded. But Rule 56 contains no provision excepting fraud cases from its terms. Nor does it provide that if fraud is charged that in itself constitutes the reasons stated which under Rule 56 (f) justify the failure to present some facts in the counter-affidavits. A defendant in a fraud case would seem to have just as much right as a party in any other type of case to show under Rule 56 (c) that there is no genuine issue as to any material fact.

It has been suggested that in this type of case summary judgment is precluded because the plaintiff is entitled to cross-examine the defendants' witnesses, who

should be exposed both to such cross-examination and to the scrutiny of the court instead of being permitted to file affidavits describing private transactions. In a dictum in Arnstein v. Porter, 2 Cir., 1946, 154 F.2d 464, Judge Frank seems to support this view when he describes graphically an unreported case in the following language at page 471: "We think that Rule 56 was not designed thus to foreclose plaintiff's privilege of examining defendant at a trial, especially as to matters peculiarly within defendant's knowledge. Illustrative of the dangers, in this respect, of summary judgments, if not cautiously employed, is a recent case in the court below. There the judge refused to grant summary judgment for defendants, despite a mass of impressive affidavits containing copies of corporate records, the accuracy of which plaintiffs did not deny in their affidavits, and which on their face made plaintiffs' case seem nothing but a sham; at the trial however, cross-examination of the defendants revealed facts, theretofore unknown by plaintiffs, that so riddled the defendants' case as it had previously appeared on the summary judgment motion that the judge entered judgment against them for several million dollars, from which they did not appeal."

To push the language of Judge Frank to its logical conclusion would perhaps require automatic refusal of motions for summary judgment in this and almost all fraud cases. Judge Learned Hand, who voted with Judge Frank in the Arnstein case, seems to indicate as much when he points out in Bozant v. Bank of New York, 2 Cir., 1946, 156 F.2d 787, at page 790 that "the case is another mistaken effort to save time by an attempt to dispose of a complicated state of facts on motion for summary judgment. This is especially true when the plaintiff must rely for his case on what he can draw out of the defendant. Arnstein v. Porter, 2 Cir., 154 F.2d 464."

With all due respect to Judges Frank and Hand, I am not persuaded by their views in the Arnstein and Bozant cases. I find more convincing the reasoning of the dissenting opinion in the Arnstein case, written by Judge Clark, who was the Reporter to the Advisory Committee for the Federal Rules. To the same effect, a comprehensive Note in 55 Yale L. J. 810. Indeed, these cases are contrary to the philosophy of Madeirense Do Brasil S/A v. Stulman Emrick Lumrick Co., supra, in which Judge Swan concurred with Judge Clark, Judge Frank dissenting. And it is significant that subsequent to the Arnstein case and to Sartor v. Arkansas Natural Gas Corporation, 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967, which had been thought by some to restrict the authority of the courts to grant summary judgments, the Supreme Court indicated in Griffin v. Griffin, 327 U.S. 220, 66 S.Ct. 556, that a party opposing a motion for summary judgment must produce some evidence to support his contentions. The court points out, 327 U.S. at p. 236, 66 S.Ct. 564, that a claim bottomed solely upon "petitioner's unsupported suspicions" must be rejected.

Hummel v. Riordan et al., D.C. N.D. Ill. 1944, 56 F.Supp. 983, is distinguishable. There a transaction between relatives which had admittedly occurred was being attacked as fraudulent. I am prepared to follow the rule laid down in the Hummel case that a transaction between relatives is subjected to closer scrutiny than when the transaction is between strangers. But there is no affidavit before me showing any transaction between Sol Meyer and his relatives. Sol Meyer seems to have acted in a high-handed and reprehensible manner with other people's money, which resulted in this large judgment against him. Meyer v. Gavin, 1941, 110 Ind. App. 403, 37 N.E. 2d 291. But that the sins of the father are visited upon the children does not constitute a rule of law. And unless something analogous to a bill of attainder is to be invoked here, the misdeeds of Sol Meyer many years ago do not make a judgment arising out of those transactions collectible from his son Ferd S. Meyer, other relatives, friends and business associates.

I am aware (1) that "Rule 56 should be cautiously invoked to the end that parties may always be afforded a trial where there is a bona fide dispute of facts between them. Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967". Associated Press v. United States, 326 U.S. 1, 6, 65 S.Ct. 1416, 1418,

89 L.Ed. 2013; (2) that a "litigant has a right to a trial where there is the slightest doubt as to the facts * * *". Doehler Metal Furniture Co. v. United States, 2 Cir., 1945, 149 F.2d 130, 135, Avrick v. Rockmont Envelope Co., supra; (3) that since an order denying a motion for summary judgment is not appealable, Doehler Metal Furniture Co. v. United States, supra, page 135 of 149 F.2d, discretion is frequently the better part of valor and summary judgments are generally granted only in the clearest cases; (4) that if reversal follows the entry of a summary judgment, the attempt to save time and expense has boomeranged by causing even more delay and expense; and (5) that despite disagreement with the Arnstein case it must be recognized that granting motions for summary judgment in fraud cases might on occasion result in fraud going undetected which otherwise might have been exposed at a plenary trial.

The foregoing might conceivably tip the balance in favor of the plaintiff sufficiently to warrant refusal of the motion for summary judgment herein, were it not for the following considerations:

1. The complaint was filed on May 20, 1946, and the defendants' answers, setting up the same defenses which appear in their affidavits, were filed on June 29, 1946. The motion for summary judgment was filed on January 7, 1947. The plaintiff has therefore been entitled for many months to take the depositions of the defendants and to examine such records as he might desire to examine, and has been informed in detail since the filing of the answers as to the defendants' contentions.

2. If the plaintiff's claim arose out of a comparatively recent transaction, I might find more force in his position that the motion for summary judgment should be refused. The single issue raised by the motion for summary judgment is whether or not Sol Meyer furnished any portion of the capital of the Florida corporation when it was organized, and if so, whether he caused certain of its shares which actually belonged to him to be issued in the names of certain of the defendants in order to defraud his creditors. If this occurred, it happened in 1934. In piercing the allegations of fact in the pleadings and raising this issue, the defendants in their affidavits have committed themselves to a detailed story of the manner in which the corporation was organized and financed. It will in the future be difficult, if not impossible, for the defendants to adopt any other theory. Under these circumstances, there would seem to be little merit in the plaintiff's fear of prejudice by present disclosure of some of the evidence he claims he possesses which supports the allegations of the complaint.

3. This would apparently be an expensive case to try. While I by no means intimate that this is a strike suit, the defendants are entitled to maintain that they should no be forced into a long and expensive trial far from where the transactions involved took place and the domicile of most of them, if it can be demonstrated that the issues are in fact sham. While I find it unnecessary to pass on the issue of forum non conveniens which has been raised elsewhere in this case, I cannot be unmindful of the fact that, whether deliberately or otherwise, the plaintiff has selected a forum which seems to provide no particular advantage for the plaintiff and which on the other hand is highly inconvenient for practically all the defendants. Under the circumstances, it is not too much to require the plaintiff, in order to avoid any implication that this is a strike suit, to reveal some of the facts on which he relies to show that there is a genuine issue of fact as to whether Sol Meyer furnished any of the capital for the Florida corporation and caused some of its shares to be issued to some of the defendants in order to defraud his creditors.

4. The predecessor in interest of the plaintiff sought unsuccessfully in a suit similar to the instant case, which he brought in a state court in Florida against Ferd S. Meyer individually and as a trustee, to obtain payment of the judgment involved herein. I find it unnecessary to determine on this motion for summary judgment whether, as the defendants contend, the Florida judgment in favor of the defendants enables some of the defendants to plead res judicata, as to one portion of the claim herein. I mention the Florida case

only to indicate that the transcript of testimony in that case which is before me on this motion for summary judgment demonstrates that some years before this suit was filed the plaintiff's assignor was or could have become familiar to some extent at least with the transactions assailed herein.

■ The short of it is that if these facts had occurred recently or had just been discovered by the plaintiff, or the case could be tried promptly in two or three days without considerable expense and inconvenience to the parties, the temptation would be strong to refuse the motion for summary judgment. But the equities of the case—if that phrase may be used in connection with such a motion—are, on the present state of the record, so substantial in favor of the defendants that I am constrained to rule in their favor. The party resisting a motion for summary judgment is not entitled to keep a controversy alive indefinitely in the hope that undisclosed evidence will hereafter fortuitously appear or be uncovered. Lawsuits are no longer governed by the sporting theory of justice; they must be supported by facts, not a hope or gamble. The remote possibility that in one of many cases fraud may be exposed by a trial cannot be the basis for holding that all fraud cases must be tried despite the fact that they rest on unsupported suspicion. This is particularly true where as here the claim may be stale, a previous effort to espouse the same or at least a similar theory has proved fruitless, and a trial would be in the indefinite future, long, expensive and inconvenient. It is not inappropriate to indicate at this point that while I am not prepared to say on the present record that the delay in bringing this suit amounted to laches, it is worth noting that even Judge Frank, with his marked antipathy toward motions for summary judgment, found it proper to enter a summary judgment in a fraud case when laches existed. Dixon v. Am. Telephone & Telegraph Co., 2 Cir., 1947, 159 F.2d 863.

It should be noted that in some cases opposition to a motion for summary judgment has prevailed under Rule 56 (f) on the ground that the facts are within the exclusive knowledge of the moving party. 3 Moore, supra, 3189, and 1946 Supp. pp. 197, 198. But the plaintiff does not expressly take this position in his affidavit or brief. And even if he did, mere general averment of exclusive knowledge in the other party is not enough in the absence of a showing of what facts are involved, why they are known exclusively by the moving party, and what steps the opposing party has taken to obtain such evidence. See Hartmann v. Time Inc., D.C.E.D.Pa., 64 F.Supp. 671, 677, 678. And, as pointed out in 3 Moore, supra, p. 3189, even under those circumstances the court should at the most permit the adverse party to take the deposition of the moving party or to obtain other discovery, unless the court is of the opinion under all the 'circumstances that the adverse party may be able to establish his case if afforded the opportunity to cross-examine the moving party in court, in which event the court may deny the motion for summary judgment.

Despite all these considerations, in view of the fact that the plaintiff charges fraud, I am unwilling to enter judgment for the defendants without giving the plaintiff a further opportunity to file additional affidavits, take depositions or utilize discovery. The plaintiff has requested the court to refuse the application for summary judgment under Rule 56 (f). That I am unable to do. But Rule 56 (f) also provides in the alternative that the court may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as may be just.

Although the plaintiff has not asked for an order under this alternative provision of Rule 56 (f), the court is reluctant to deny the plaintiff the right to a trial, if in fact he has, or can obtain within a reasonable time, some evidence which would raise a genuine issue of fact as to whether Sol Meyer furnished any part of the capital of the Florida corporation under the circumstances alleged in the complaint. Accordingly, entry of a summary judgment will be withheld for a period of twenty days, in order to permit the plaintiff, if he is so advised, (a) to file further affidavits in support of his opposition to the motion for summary judgment or (b) to advise the court of the dates, places and names of the

defendants and other persons whose depositions he proposes to take or the discovery he proposes to institute, and, if possible, without revealing all the details thereof, what in general he proposes to show by such depositions or discovery. See Toebelman et al. v. Missouri Kansas Pipe Line Co., 3 Cir., 1942, 130 F.2d 1016, 1022; Goldboss v. Reimann, D.C.S.D.N.Y., 1942, 44 F.Supp. 756, 759, 760; Shultz et al. v. Manufacturers & Traders Trust Co. et al, D.C.W.D.N.Y., 1939, 30 F.Supp. 443, Id., D.C.W.D.N.Y., 1939, 32 F.Supp. 120, Id., D.C.W.D.N.Y., 1940, 1 F.R.D. 451. If none of these steps is taken by the plaintiff within twenty days, judgment will be entered as prayed for in the motion for summary judgment.